IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AUSTINE R. FINK                          :

                                :

    v.                          :   Civil Action No. DKC 2007-0714

                                :

JAMES E. RICHMOND, ET AL.                :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12112 *et seq.*, are: (1) a motion for summary judgment filed by Defendants Board of Education of Charles County (the "Board"), Keith A. Hettel, and James Richmond (Paper 79); (2) a motion in *limine* filed by Austine R. Fink (Paper 85); and (3) a joint motion requesting oral argument (Paper 86).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.[1]  For the reasons that follow, Defendants' motion for summary judgment will be granted, Plaintiff's motion in *limine* will be denied, and the parties' joint motion requesting oral argument will be denied.

## I.   Background

The following facts are either undisputed or have been construed in the light most favorable to Plaintiff.  Plaintiff Austine Fink has been an art teacher in Charles County, Maryland

---

[1] The parties' motion for oral argument (paper 86) will be denied.

since 1996.   From 1996 to 2006, she taught art and computer technology at John Hanson Middle School and Mary H. Matula Elementary School.   In March 2006, Plaintiff first sought medical attention for an ailment later diagnosed as Barrett's Esophagus, a precancerous condition that exponentially increases the risk of esophageal cancer.   Plaintiff had an esophagectomy in June 2006 to remove her esophagus.   Due to the surgery, Plaintiff cannot bend over without vomit coming to her mouth, carry excessive weight, or eat large meals.   She must eat seven to ten meals a day to get the proper caloric intake.   Plaintiff has frequent bowel movements and occasionally has bouts of profuse diarrhea, prompting her on occasion to wear an adult diaper.   Plaintiff also has trouble walking long distances at a quick pace.   Plaintiff is able to wash and groom herself, pick things up off the floor by using her toes, and travel abroad without assistance.

Plaintiff's husband and Defendant Keith Hettel, the Board's Assistant Superintendent for Human Resources, communicated during the summer and fall of 2006 about Plaintiff's health condition. Plaintiff's husband indicated that Plaintiff would be ready to return to work at or near the beginning of 2007.   Plaintiff met with Hettel on November 29, 2006 and again on December 1, 2006, and shared her accommodation needs with him at or around the time of these meetings.   Plaintiff's doctor, Dr. F. George Leon, wrote a letter to the Board dated December 7, 2006 indicating that

2

Plaintiff was ready to return to work in January 2007.  Dr. Leon's letter listed Plaintiff's accommodation needs as including reasonable bathroom breaks, the ability to consume food on a frequent basis, and avoidance of exposure to excessive chemical fumes.  He opined that Plaintiff could not return to a position as a classroom teacher in an elementary or middle school.  (Paper 79, Ex. 4).

After receiving Dr. Leon's letter, Defendant Hettel sought to locate a suitable high school in which to place Plaintiff.  As of December 2006, there were no openings in art education within the school system.  The last art teacher opening at McDonough High School had been filled in November 2006.  Plaintiff was initially placed at LaPlata High School as an art assistant and at Matula Elementary School as a teacher mentor with no student contact.  About a week after beginning her assignment at LaPlata High School, Plaintiff was reassigned to North Point High School due to an opening that arose in that school's art department.  At North Point, Principal Peter Cevenini initially assigned Plaintiff to teach art classes, but the previous art teacher returned at some point after Plaintiff's arrival.  Thus, Cevinini assigned Plaintiff to a variety of tasks, including teaching in-school retention ("ISR") in a converted storage closet.  After returning to work, Plaintiff complained that she could not take breaks while teaching ISR, was allowed no planning time, was never assigned her own

3

planning office or room, was assigned to substitute in classes with middle school students, and that Vice Principal Ron Wilson failed to relieve her so that she could take needed bathroom breaks. Plaintiff also complained that her classroom assignments required her to walk a long distance across the school in a short amount of time.  (Paper 79, Ex. 2, Plaintiff Dep., at 94-95).

After Plaintiff had been assigned to North Point at the start of calendar year 2007, an art teacher vacancy became available at Thomas Stone High School due to a January 3, 2007 resignation. (Paper 79, Ex. 15, McDonald Dep., at 41).  According to Sean McDonald, Defendant Hettel's assistant, Plaintiff was not considered for that position because she had already been placed at LaPlata High School.  Moreover, teachers were not permitted to apply for a transfer until the May to June transfer window, and Plaintiff had already been assigned to LaPlata.  Plaintiff's subsequent move to North Point occurred due to the superintendent's transfer decision, not because Plaintiff requested it.

Plaintiff attended a meeting on July 26, 2007 to discuss accommodations that could be made for the upcoming 2007-08 school year.  (Paper 79, Ex. 18, Hettel Aff. ¶ 12).  Defendants offered Plaintiff several accommodations, including placing her classrooms near bathrooms, relieving her of physically-intensive duties, and allowing her to eat during instructional periods.  (Paper 79, Ex. 19, at 1).  At this meeting, Plaintiff requested that she be placed

4

in a fixed classroom for the entire day, rather than as a "floater" who would move between multiple classrooms throughout the day. (Paper 79, Ex. 20, K. Hill Aff. ¶ 18).  Teachers are routinely assigned as floaters due to a shortage of available classrooms for every teacher, and Defendants claim that building seniority plays a critical role in the assignment of teachers to classrooms and that Plaintiff had less seniority at North Point than other art teachers.

Defendants agreed to all of the proposed accommodations except the fixed classroom request.  (Paper 79, Ex. 19, at 2; Ex. 20, K. Hill Aff. ¶ 23).  On August 2, 2007, Dr. Leon wrote a letter to the Board expressing concern that Plaintiff's classroom assignments for the upcoming school year would require her to walk "in busy hallways filled with students" and opined that Plaintiff required a fixed classroom.  (Paper 79, Ex. 6, at 2).  Nonetheless, Plaintiff was assigned to North Point as a floater for the 2007-08 school year.

Plaintiff did not receive pay as scheduled from mid-December 2006 through February 2, 2007.  The Board contends that it believed it had overpaid Plaintiff in 2006 for sick leave and was compensating for that mistake.  Defendants later realized Plaintiff had not been overpaid and reimbursed her.  (Paper 79, Ex. 27, Bilbra Aff. ¶ 10).

On August 16, 2007, Defendants placed Plaintiff on a paid leave of absence pending the outcome of a medical examination by a Board-designated physician to determine Plaintiff's fitness for work.  Dr. Ross Myerson conducted a medical evaluation, including a physical examination, of Plaintiff on September 26, 2007 and issued a written report.  Dr. Myerson concluded that Plaintiff could "perform the duties and functions of a high school teacher without risk of aggravating her medical condition . . . ." (Paper 79, Ex. 13, at 4).  Based on these results, Defendants informed Plaintiff on October 11, 2007 that she should return to work on October 15, 2007.  (Paper 84, Ex. 18).  On October 12, Plaintiff sought clarification on whether Defendants would provide Plaintiff with a wheelchair and permanent aide that Defendants allegedly agreed to during the August 2007 hearing.  Defendants informed Plaintiff that they would not provide her a wheelchair but would provide an aide on an as-needed basis.  Because of Defendants' failure to provide all of the requested accommodations, Plaintiff did not return to work on October 15, 2007.  Defendants subsequently informed Plaintiff that she was immediately removed from paid medical leave and would be charged sick and personal leave for her absences until that leave was exhausted, at which time she would be placed on unpaid leave.  (Paper 84, Ex. 21).

For the 2008-09 school year, Defendants offered and Plaintiff accepted a transfer to a fixed classroom position at the Robert D.

Stethem Educational Center.  (Paper 79, Ex. 2, Plaintiff Dep., at 36-37).

Plaintiff filed her original complaint on March 20, 2007 against the Board, Superintendent James E. Richmond, and Assistant Superintendent for Human Resources Keith A. Hettel.  Plaintiff alleged violations of: (1) the Rehabilitation Act of 1973, 29 U.S.C. § 794, (2) Title I and Title II of the ADA, 29 U.S.C. §§ 12112, 12131; (3) 42 U.S.C. § 1983; and (4) the Maryland Wage Collection and Payment Act, Md. Code Ann., Lab & Empl. § 3-501, *et seq.* (West 2007).  (Paper 1).  On March 27, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants alleging violations of Title I of the ADA.  The EEOC issued a Notice of Right to Sue on May 1, 2007 and closed the case.  On May 4, 2007, Plaintiff filed her first amended complaint.  (Paper 10).  Plaintiff filed a motion for a preliminary injunction on August 2, 2007, (Paper 29), which was denied.  (Paper 35).  On March 24, 2008, this court granted in part and denied in part Defendants' motion to dismiss and granted Plaintiff's motion for leave to file a second amended complaint. Plaintiff filed a second amended complaint and subsequently filed a third amended complaint.  (Papers 56, 59).  The current complaint seeks declaratory and injunctive relief under Section 794 of the Rehabilitation Act of 1973, Title I and Title II of the Americans with Disabilities Act, as well as compensatory and punitive

damages, back pay, front pay, treble damages, costs and attorney's fees.  Defendants filed a motion for summary judgment on December 1, 2008.  (Paper 79).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett*, 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp.*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id*.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his

or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

## III. Analysis

Plaintiff contends that Defendants discriminated against her due to her disability and retaliated against her in violation of the Rehabilitation Act and the ADA. Defendants move for summary judgment on several grounds. First, Defendants ask this court to reconsider its previous ruling that the Eleventh Amendment does not bar Plaintiff's claim under Section 504 of the Rehabilitation Act and Title II of the ADA, and to dismiss all claims against Defendant Richmond. Second, Defendants argue that Plaintiff is not an "otherwise qualified individual with a disability" as required by the ADA and Rehabilitation Act. Third, Defendants insist that there is no genuine issue of material fact as to whether they offered Plaintiff reasonable accommodations as required by the ADA

and Rehabilitation Act.  Fourth, Defendants argue that Plaintiff's retaliation claim is insufficient as a matter of law.

### A.   Whether Defendants Are Protected by the Eleventh Amendment

Defendants ask this court to reconsider its previous ruling that the Eleventh Amendment does not bar Plaintiff's claims under the Rehabilitation Act.  They present no new facts or law on this question and their request for reconsideration of this ruling will be denied.

On the question whether Title II of the ADA applies to this case, Defendants rely on Judge Nickerson's unpublished opinion in *Baker v. Kent County Bd. of Educ. et. al.*, Civil Action No. WMN-07-CV-0824 (Oct. 15, 2008), for the proposition that "a protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." (Paper 79, Ex. A, at 14).  However, Judge Nickerson also wrote that "no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract.'" (*Id.*) (citing *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990)).  Here, Plaintiff has provided evidence that she was placed on sick and personal leave, which led to unpaid leave, on October 15, 2007.  (Paper 79, Ex. 23).  Because Plaintiff sufficiently proffers that she was deprived of compensation in the form of lost leave time and was eventually placed on unpaid leave, she has shown a cognizable Fourteenth Amendment injury that removes

10

the Eleventh Amendment immunity from Defendants under Title II of the ADA.

**B.    Whether Claims Against Defendant Richmond Should Be Dismissed**

Regarding the claims against Richmond, Plaintiff concedes that she is suing Defendant Richmond in his official capacity as superintendent of schools of Charles County and not as an individual. Defendants cite *Lissau v. S. Food Serv.*, 159 F.3d 177, 180-81 (4th Cir. 1998), and *Henderson v. Gilbert*, 2006 WL 1966797 (D.Md. 2006), for the notion that individual supervisors are not employers and cannot be sued under the ADA. *Henderson* also notes that suing supervisors in their official capacity is permissible but would be redundant because those suits would be treated as ones against the government agency in question. *Henderson*, 2006 WL 1966797 at *2, n.1. Plaintiff has sued the government agency and the redundant claim against Richmond in his official capacity should be dismissed if any portion of the complaint goes forward. Plaintiff also contends that Richmond is subject to Title I of the ADA. That issue was decided in favor of Defendants in *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 368 (2001) and was addressed in this court's previous Memorandum Opinion. (Paper 54, at 16). As stated in that opinion, no Title I claims may proceed against any of the Defendants.

11

## C.   Whether Plaintiff is an Otherwise Qualified Individual with a Disability

To make out a *prima facie* case under the ADA, Plaintiff must show that: (1) she is an individual with a disability within the meaning of the statute; (2) Defendants had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position sought; and (4) Defendants refused to make such accommodations. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2ᵈ Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).

The ADA and Rehabilitation Act define a disability as any "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B). EEOC regulations state that a physical impairment includes any "anatomical loss affecting one or more of the following body systems: . . . digestive, genito-urinary." 29 C.F.R. § 1630.2(j)(1).[2] Major life activities are those activities of "central importance to most people's lives" and "that the average person in the general population can perform with little or no difficulty." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 269

---

[2]   The persuasive authority of the EEOC regulations in interpreting the ADA has not been resolved by the Supreme Court of the United States or the United States Court of Appeals for the Fourth Circuit. *See, e.g., Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467-68 (4ᵗʰ Cir. 2002), *cert. denied*, 537 U.S. 827 (2002).

(4th Cir. 2001); *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 254-55 (4th Cir. 2006), *cert. denied*, 548 U.S. 941 (2006). The question of whether an individual is disabled "is a question of law for the court, not a question of fact for the jury." *Rose v. Home Depot U.S.A.*, 186 F.Supp.2d 595, 608 (D.Md. 2002) (citing *Hooven-Lewis*, 249 F.3d at 268).

Plaintiff proffers multiple major life activities that she claims are substantially limited by her physical impairment of having no esophagus and a smaller stomach, including her ability to (1) eat, (2) walk, and (3) bend and lift.

## 1. Plaintiff's Ability to Eat

First, Plaintiff claims that her impairment substantially limits her ability to eat.[3]  Eating is unquestionably a major life activity because of its necessity in daily life and the ease with which most people can consume food and drink. *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2004), *cert. denied*, 541 U.S. 937 (2004); *E.E.O.C. v. Browning-Ferris*, *Inc.*, 262 F.Supp.2d 577, 583 (D.Md. 2002). Defendants concede that eating is a major life activity.

Plaintiff must also show that her ability to eat is substantially impaired. This determination is an individual inquiry tied to the particular facts of each case. *E.E.O.C. v.*

---

[3]  For purposes of this section, "eating" includes all of Plaintiff's alleged digestive disorders.

*Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001).   The term
"substantially" is defined as "considerable or to a large degree"
and does not include impairments whose effects constitute only a
"mere difference" with those of the average individual. *Heiko*, 434
F.3d at 256.   EEOC regulations require consideration of the "nature
and severity" of the impairment, its duration, and its permanent or
long-term impact.   29 C.F.R. § 1630.2(j)(2).   The effects of
corrective measures are to be considered in evaluating whether an
impairment is substantially limiting. *Heiko*, 434 F.3d at 256.

Here, Plaintiff presents evidence that would support a finding
that her ability to eat is substantially limited.   Dr. Blair
Marshall, who performed the esophagectomy, explained that the size
of Plaintiff's stomach is "quite small, so it does not have the
normal reservoir, requiring [Plaintiff] to eat frequent small
amounts," and which often leads to excessive diarrhea, nausea, and
vomiting.   (Paper 79, Ex. 7).   Treating physician Dr. George Leon
opined that Plaintiff can no longer keep large amounts of food down
and must eat frequently for proper nutrient absorption.   (Paper 79,
Ex. 6).   Plaintiff no longer has her esophagus, making her
impairment permanent.

Defendants rely on *Vailes v. Prince George's County, Maryland*,
39 Fed. Appx. 867, 869 (4th Cir. 2002), in support of their
assertion that Plaintiff's condition does not substantially impair
her ability to eat.   In *Vailes*, the Fourth Circuit held that the

14

plaintiff's paralyzed vocal cord did not limit major life activities of drinking, swallowing, breathing, or speaking, as her condition resulted in only "intermittent coughing attacks and a gagging sensation." *Id*.  However, Defendants' reliance on this case is misplaced because unlike the "intermittent" problems facing the plaintiff in *Vailes,* Plaintiff's limitations are substantial, disabling, and permanent.

Defendants further argue that the addition of digestive impairments to the definition of major bodily functions in the ADA Amendments Act of 2008 ("ADAAA") shows that Plaintiff's digestive system impairments were not covered under the pre-amendment ADA.[4] This argument overlooks eating as a major life activity under the ADA.  Because Plaintiff's ability to eat is substantially impaired, it does not matter whether her digestive impairments would separately qualify her as disabled.  Given the permanent nature of Plaintiff's eating impairment and her physical inability to consume food in regular quantities or at regular intervals, Plaintiff's eating impairment qualifies as a disability under the ADA and Rehabilitation Act.  *See Fraser v. Goodale*, 342 F.3d 1032, 1041 (9th Cir. 2003) (finding that a diabetes patient who must perpetually monitor her food intake qualifies as disabled).

---

[4]   The ADAAA became effective on January 1, 2009.  It does not, however, contain clear Congressional intent to apply it retroactively.  *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 311 (1994) (requiring "clear evidence of intent to impose the restorative statute retroactively.").

   2.  **Plaintiff's Ability to Walk**

   Plaintiff also argues that she is substantially limited in the major life activity of walking.  Walking is a major life activity.  *Wilson v. Phoenix Specialty Mfg. Co, Inc.*, 513 F.3d 378, 384 (4th Cir. 2008).  Plaintiff presents evidence that she is unable to walk at a quick pace and would have chest pains if she needed to do so.  (Paper 84, Ex. 3, Plaintiff Dep., at 107-09).  Dr. Marshall noted that Plaintiff is prone to negative symptoms when she needs to walk quickly to cover a lengthy distance.  (Paper 84, Ex. 14).  He also noted that esophagectomy patients never fully recover and that a large percentage of patients experience worsening symptoms throughout their lives.  Defendants' expert witness, Dr. Ross S. Myerson, observed that Plaintiff should avoid "excessive walking and hurrying" because it may cause negative symptoms.  (Paper 84, Ex. 15, at 4).  Plaintiff concedes that she is able to walk at a normal pace and has never used a wheelchair, including during a trip to Spain.  (Paper 79, Ex. 2, Plaintiff Dep., at 109, 120-21).

   Plaintiff has not shown that she is substantially limited in the major life activity of walking.  While Plaintiff's walking impairment is permanent, it is not sufficiently severe.  Plaintiff's inability to walk at a fast pace constitutes a mere difference with the average person, not a considerable difference as required by the Rehabilitation Act and ADA.  Plaintiff's impairment is quite similar to those in cases where a walking

16

impairment was deemed not to constitute a disability.  For example, in *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3[d] Cir. 1996), the plaintiff was deemed not disabled despite having a walking impairment that prevented him from walking "more than a mile or so" and required him to pace himself slowly when walking up stairs. Similarly, in *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1996), a plaintiff who could not "walk briskly" was ruled not disabled because that inability did not substantially limit her ability to walk.

In this case, Plaintiff's walking impairment only affects her ability to walk quickly or for long distances, and as in *Kelly* and *Penny*, does not substantially limit her ability to walk.   In addition, Plaintiff's case pales in comparison to other walking impairments that courts have deemed constitute disabilities.  For example, in *E.E.O.C. v. Sears Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005), the plaintiff could not walk more than the equivalent of one city block without her right leg and feet becoming numb. After traveling that distance, walking became "nearly impossible and extremely slow."   *Id*.   Plaintiff's walking impairment, in contrast, is not sufficiently severe to constitute a disability under the ADA and Rehabilitation Act.

### 3.  Plaintiff's Ability to Bend and Lift

Plaintiff also claims that her physical limitations on bending and lifting affect major life activities under the ADA.  Defendants

argue that bending and lifting do not constitute major life activities, pointing to federal regulations defining major life activities under the ADA as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).  In addition, Defendants contend that the ADAAA's change in the definition of major life activities to include bending and lifting underscores that bending and lifting were not major life activities under the original ADA, the applicable statute in question here.  Plaintiff counters that the ADAAA simply clarified the ADA's inclusion of bending and lifting as major life activities.

Prior to the ADA amendments, bending and lifting impairments did not qualify as major life activities.  Bending and lifting are not of "central importance to daily life" in the same manner that walking, breathing and seeing are central to most people's lives.  *Compare Heiko*, 434 F.3d at 255 (finding that eliminating bodily waste is a major life activity because it is "basic to any person's daily regimen" and of "life-sustaining importance").  That is, people can live a relatively normal life despite not having the ability to bend or lift heavy objects.  In fact, Plaintiff can bathe, groom, and dress herself, carry a bag to school, and has "learned to handle everyday tasks." (Paper 79, Ex. 2, Plaintiff Dep., at 95, 100, 111).  Because the ADA amendments do not apply retroactively, Plaintiff cannot demonstrate that bending and

lifting are major life activities under the ADA.  Moreover, even if
the amendments applied retroactively such that bending and lifting
were considered major life activities and Plaintiff was found to be
disabled due to her bending and lifting impairments, Defendants
reasonably   accommodated   those   impairments.      Specifically,
Defendants placed Plaintiff in a high school setting, where she
would not have to bend over and risk injury from elementary and
middle school children.  Defendants also provided her with a cart
to move her supplies.

### D.   Whether Defendants Offered Reasonable Accommodations to Plaintiff

Once it has been established that Plaintiff has a disability
that substantially limits a major life activity, the next inquiry
is whether Defendants reasonably accommodated her disability.  An
employer must offer reasonable accommodations to an employee who
has  a  disability,  unless  the  employer  can  show  that  the
accommodation "would impose an undue hardship" on the employer.  42
U.S.C. § 12112(b)(5)(A); *Sara Lee Corp.*, 237 F.3d at 353.  "The ADA
does not require an employer to provide the specific accommodation
requested . . ., or even to provide the best accommodation, so long
as the accommodation . . . is reasonable."  *Scott v. Montgomery
County Gov't*, 164 F.Supp.2d 502, 508-09 (D.Md. 2001).

Defendants argue that they are entitled to summary judgment
because  they  offered  reasonable  accommodations  to  Plaintiff.
Plaintiff insists that Defendants failed to offer her reasonable

19

accommodations because they: (1) did not create an administrative position for her; (2) did not offer her vacant positions at McDonough and Thomas Stone High Schools; (3) did not provide Plaintiff with a wheelchair; (4) assigned her to non-teaching duties in addition to her teaching duties during the 2006-07 school year; and (5) required her to be a "floater" instead of assigning her to a fixed classroom.

### 1. Whether Defendants Were Required to Create an Administrative Position for Plaintiff

Plaintiff maintains that Defendants should have considered creating a new administrative position of Visual Arts Director for her. (Paper 79, Ex. 16).   In addition, Plaintiff argues that Defendants refused to engage in meaningful discussion about creating an administrative position.   However, Plaintiff's arguments are of no merit because Defendants were under no legal obligation to engage in such discussions.   While job restructuring, modified work schedules, and reassignment to a vacant position are included in the ADA as reasonable accommodations, the ADA does not require the creation of a new position as a reasonable accommodation.   42 U.S.C. § 12111(9)(B); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996); *Shiring v. Runyon*, 90 F.3d 827, 832 (3[d] Cir. 1996); *Benson v. Northwest Airlines*, 62 F.3d 1108, 1114 (8th Cir. 1995).

**2. Whether Defendants Were Required to Offer Plaintiff Vacant Positions at Two High Schools**

Plaintiff argues that Defendants should have assigned her to the vacant art department positions either at Thomas Stone High School or McDonough High School instead of placing her at North Point High School.  Defendants assert that neither school had an opening at the time Plaintiff returned to work.  Defendants point out that Thomas Stone High School's art position was filled prior to Plaintiff's return to work and McDonough High School did not have a vacancy until after Plaintiff had been assigned to an art position at North Point High School.  (Paper 79, Ex. 14, K. Hettel Dep., at 59-60, 65-66).  Plaintiff claims that Defendants knew about her expected return to teaching prior to placing another individual in the vacant McDonough High School position and should have notified her about the opening at Thomas Stone High School. (Paper 79, Ex. 15, McDonald Dep., at 43).  In her opposition, Plaintiff contends that the opening at Thomas Stone High School was the "potentially perfect slot" for her.  (Paper 84, at 22).  Again, however, Defendants are only required to offer a *reasonable* accommodation, not the perfect or Plaintiff's preferred accommodation.  *See Scott*, 164 F.Supp.2d at 508-09.  Plaintiff's placement at North Point High School as an art teacher satisfied Defendants' duty to reasonably accommodate Plaintiff regardless of her desire for a different placement.

### 3.    Whether Defendants Could Assign Plaintiff to Non-Teaching Duties During the 2006-07 School Year

Plaintiff cannot show that her assignment to non-teaching duties breached Defendants' duty to provide reasonable accommodations.  Plaintiff may not have preferred substitute, Spanish or ISR assignments, but she has no legal basis to claim that those assignments violated her access to reasonable accommodations.  The assignment of various classes and the requirement to get substitute slips are unrelated to her disability and constitute a general employment gripe rather than a failure to provide reasonable accommodations.

Plaintiff's contentions regarding the nature of accommodations during her non-teaching duties are also without merit.  Plaintiff claims that she did not receive required breaks while teaching ISR. However, Plaintiff voluntarily chose to teach ISR despite knowing that she would not receive breaks or planning time, and she was able to use the bathroom during her ISR assignments.  (Paper 84, Ex. 3, Plaintiff Dep., at 291-92).  Plaintiff also contends that she was forced to substitute teach in classrooms that were not near bathrooms.  However, she never asked Vice Principal Wilson to identify all of the bathrooms in the building and never told him that her classroom assignments presented a problem.  (*Id*. at 308-10).

### 4.   Whether Defendants Were Required to Provide Plaintiff a Wheelchair

Plaintiff maintains that Defendants' withdrawal of their offer of a wheelchair constitutes a failure to provide reasonable accommodations.   However, Plaintiff admits that she does not require a wheelchair, admits that she has not used a wheelchair since her esophageal surgery, (Paper 79, Ex. 2, Plaintiff Dep., at 120), and stated at the August 14, 2007 hearing that she was "not really in need of a wheelchair." (Paper 79, Ex. 12, at 75).   Dr. Leon, Plaintiff's treating physician, wrote four letters to Defendants discussing his opinion as to Plaintiff's accommodation needs, and none indicates that a wheelchair would be an appropriate accommodation for Plaintiff.   (Paper 79, Exs. 4, 5, 6, 10).   Dr. Myerson also concluded that Plaintiff does not need a wheelchair to perform her teaching duties.   (Paper 79, Ex. 13, at 4).   No reasonable fact finder could conclude that Defendants' failure to provide Plaintiff with a wheelchair constitutes a breach of their responsibility to provide reasonable accommodations.

### 5.   Whether Defendants Were Required to Assign Plaintiff a Fixed Classroom

Plaintiff further contends that Defendants' decision not to assign her a fixed classroom constitutes a failure to provide reasonable accommodations.   Employers are generally not required to change a nondiscriminatory company policy to meet the ADA's reasonable accommodation mandate.   *Sara Lee Corp.*, 237 F.3d at 354.

23

In *Sara Lee Corp*., an epileptic employee was denied a requested accommodation to remain on the daytime shift because she had no right under the ADA to supercede her employer's well-established seniority system regarding shift placements. *Id*. The court stated that "[t]he ADA does not require reassignment when it would mandate that the employer bump another employee out of a particular position." *Id*. at 355. Rare exceptions occur when special circumstances demand a finding that the requested accommodation is reasonable despite the existence of a seniority system, *U.S. Airways v. Barnett*, 535 U.S. 391, 405 (2002), but Plaintiff's eating impairment does not provide such a special circumstance. Plaintiff's bald claim that she needs a fixed classroom so that she can eat frequent meals and spend the time between class periods for bathroom breaks does not overcome the undisputed facts that Plaintiff is permitted to eat during class periods and Defendants "put [her] next to all the [student] bathrooms." (Paper 79, Ex. 12, at 77). Because Defendants reasonably accommodated Plaintiff's disability, their motion for summary judgment will be granted on Plaintiff's disability claims under the ADA and Rehabilitation Act.

   **E.   Plaintiff's Retaliation Claim**

   Plaintiff also contends that Defendants retaliated against her for asserting her rights under the Rehabilitation Act and ADA. This court will apply the standard set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims. *Karpel*

*v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998).
To establish a *prima facie* case of retaliation under both the
Rehabilitation Act and ADA, Plaintiff must show that: (1) she
engaged in a protected activity; (2) Defendants took an adverse
employment action against her; and (3) a causal connection exists
between the protected activity and the adverse employment action.
*Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001).
Once the *prima facie* case is established, the burden shifts to
Defendants to provide a legitimate nondiscriminatory reason for the
adverse action.  *Karpel*, 134 F.3d at 1228.  If Defendants provide
a reason, the burden shifts back to Plaintiff to show that
Defendants' reason is pretextual.  *Id*.

> **1.   *Prima Facie* Case**

Plaintiff has established the first element of her *prima facie*
case because a request for reasonable accommodations is a protected
activity.  *Haulbrook*, 252 F.3d at 706, n.3.  Plaintiff requested
accommodations for her disability on several occasions, including
in a written letter that Dr. Leon sent to Defendants in December
2006.  (Paper 79, Ex. 4).

Next, Plaintiff must show that Defendants took an adverse
employment action against her.  An action is materially adverse if
it was harmful enough to have "dissuaded a reasonable worker from
making or supporting a charge of discrimination."  *Burlington N. &
Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Plaintiff

argues that she suffered three distinct adverse actions: (1) Defendants failed to hire her for art teacher positions at Thomas Stone High School and McDonough High School, (2) Defendants withheld back pay, and (3) Defendants placed her on administrative leave without pay after she was not provided with a wheelchair and permanent aide, which caused her to be charged vacation and sick days.

Examining Plaintiff's first allegation of retaliation, a failure to hire for a lateral position can be adverse if the employee's terms, conditions, and benefits of employment are affected. *See Albero v. City of Salisbury*, 422 F.Supp.2d 549, 560-61 (D.Md. 2006). Here, Plaintiff has proffered no evidence, such as a reduction in pay, showing that her assignment to North Point High School instead of Thomas Stone or McDonough High Schools altered the basic terms of her employment. Her complaints about being forced to acquire substitute slips and teach Spanish classes and ISR fall into the category of "displeasure and inconvenience" rejected by this court in *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F.Supp.2d 388, 393 (D.Md. 2002), and would not dissuade a reasonable worker from filing a claim of discrimination. In addition, Plaintiff told Assistant Principal Kimberly Hill that she enjoyed teaching at least some of her non-art assignments. (Paper 79, Ex. 17, K. Hill Dep., at 42, 88-89). Plaintiff cannot show

that Defendants' failure to assign her to Thomas Stone High School or McDonough High School was an adverse employment action.

Plaintiff's second and third contentions that she did not receive paychecks for two months and was placed on leave without pay constitute adverse employment actions. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (explaining that a decrease in pay or benefits constitutes an adverse employment action). In addition, the short time period between Plaintiff's request for reasonable accommodations and Defendants' withholding of pay is sufficient to meet the third element of the *prima facie* case. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), *rehearing denied*, 533 U.S. 912 (2001) (noting that temporal proximity must be "very close" to be sufficient evidence of causation); *Allen v. Rumsfeld*, 273 F.Supp.2d 695, 708 (D.Md. 2003)(finding that four months provided a sufficient inference of causation). Therefore, Plaintiff has established a *prima facie* case of retaliation.

### 2. Legitimate Non-Discriminatory Reasons

Defendants have provided a legitimate, non-discriminatory reason for withholding Plaintiff's pay. Defendants have presented evidence that Plaintiff's pay was withheld from December 2006 through February 2007 due to a calculation error regarding Plaintiff's sick leave. (Paper 79, Ex. 27, Bilbara Aff. ¶ 11). Once the error was discovered, pay was promptly awarded to

Plaintiff under standard payroll department guidelines. (Paper 79, Ex. 27, at Ex. C).

In addition, Defendants have presented legitimate, non-discriminatory reasons for why Plaintiff was placed on administrative leave without pay. Namely, Plaintiff refused to return to work on October 15, 2007, prompting Defendants to charge Plaintiff sick and personal leave for her absences, and once that leave had been exhausted, to place her on unpaid leave.

### 3. Pretext

In light of Defendants' legitimate, non-discriminatory reasons for withholding Plaintiff's pay and placing Plaintiff on administrative leave, Plaintiff must present evidence from which a fact finder could conclude that Defendants' explanation is pretextual. Plaintiff does not offer any evidence that Defendants' withholding of pay was pretext for retaliation. Plaintiff claims that temporal proximity between her request for accommodations and the withholding of pay is sufficient to establish to pretext. Plaintiff is mistaken under the facts of this case. *See Saunders v. Stone*, 758 F.Supp. 1143 (E.D. Va. 1991) (rejecting claim that employee whose pay was wrongfully withheld suffered retaliation when Defendant used standard payroll procedures and employee presented no evidence of pretext). While a strong *prima facie* case may sometimes also provide evidence of pretext, that is not the case here. The *prima facie* case is weak concerning the pay issues,

especially on causation.  Thus it is unlike the situation described

in *Dave v. Lanier,* 606 F.Supp.2d 45, 51 (D.D.C. 2009):

> The strength of the plaintiff's prima facie
> case, especially the existence of a causal
> connection, can be a significant factor in his
> attempt to rebut the defendant's legitimate
> non-retaliatory reason for the adverse action.
> *See Aka* [*v. Wash. Hosp. Ctr.*, 156 F.3d[1284
> (D.C. Cir. 1998)] at 1289 n. 4 (stating that
> "a prima facie case that strongly suggests
> intentional discrimination may be enough by
> itself to survive summary judgment"); *Laurent
> v. Bureau of Rehab., Inc.*, 544 F.Supp.2d 17,
> 23 n. 5 (D.D.C.2008) (holding that the
> plaintiff cannot establish pretext because
> "she is unable to show any causal
> connection"); *Meadows v. Mukasey*, 555
> F.Supp.2d 205, 211-13 (D.D.C.2008) (holding
> that the plaintiff demonstrated pretext in
> part by establishing a causal connection). The
> plaintiff may establish a causal connection
> "by showing that the employer had knowledge of
> the employee's protected activity, and that
> the [retaliatory] personnel action took place
> shortly after that activity." *Cones v.
> Shalala*, 199 F.3d 512, 521 (D.C.Cir.2000)
> (*quoting Mitchell v. Baldrige*, 759 F.2d 80, 86
> (D.C.Cir. 1985)); *accord Clark County Sch.
> Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct.
> 1508, 149 L.Ed.2d 509 (2001) (noting that the
> temporal connection must be "very close": a
> three-or four-month period between an adverse
> action and protected activity is insufficient
> to show a causal connection, and a 20-month
> period suggests "no causality at all").

Plaintiff also claims that Defendants' decision to place her

on leave without pay after she requested a wheelchair and an aide

was pretext for retaliation.  Plaintiff's contention is without

merit.  It was not Plaintiff's requests for the wheelchair and aide

that caused the placement on leave.  Rather, as previously

explained, Plaintiff was placed on leave after she refused to come to work.   Plaintiff must offer evidence that contradicts Defendants' proffered reason or is sufficiently probative of an inference that Defendants retaliated against Plaintiff.   *King v. Rumsfeld*, 328 F.3d 145 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003).   Here, Plaintiff offers no evidence that Defendants placed her on leave for any other reason other than her failure to show up for work.   (Paper 84, Ex. 18).   Because Plaintiff fails to show any evidence of pretext, Defendants' motion for summary judgment will be granted on Plaintiff's retaliation claim.

###### F.   Plaintiff's Motion in *Limine*

Finally, Plaintiff has filed a motion in *limine* seeking to exclude the deposition and expert testimony of occupational therapist Lynne Murphy.   Because Murphy's deposition was not relied upon in this opinion, Plaintiff's motion in *limine* will be denied as moot.

### IV.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted, Plaintiff's motion *in limine* will be denied, and the parties' joint motion requesting oral argument will be denied.   A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge